## THE PENNSYLVANIA R. CO. v. JACOB PETERS.

ERROR TO THE COURT OF COMMON PLEAS OF CENTRE COUNTY.

Argued February 14, 1887—Decided May 2, 1887.

There are exceptional cases of negligence, in which, the measure of duty being determinate, the same under all circumstances, (as for instance the inflexible rule requiring persons about to cross a railroad to stop, look and listen,) the question of negligence is for the court; but, as negligence is the absence of care according to the circumstances, when there is a reasonable doubt as to the facts or as to the inferences to be drawn from them; or, when the measure of duty is ordinary and reasonable care and the degree of care required varies according to the circumstances, the question of negligence is necessarily for the jury.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 54 January Term 1886, Sup. Ct.; court below, No. 219 April Term 1883, C. P.

The case below was an action for negligence by Jacob Peters against the Pennsylvania Railroad Company.

On the trial before JOHN DEAN, P. J., of Blair county, holding special term, it appeared that on the morning of October 5, 1882, Jacob Peters, the plaintiff below, bought a ticket from Unionville to Port Matilda, on the Bald Eagle Valley Railroad, leased and operated by the defendant company. The cars being somewhat crowded he found a seat in the forward end of the passenger compartment of the smoking-

car, about 35 feet from the rear door of the car which was the only exit. When the train stopped at Port Matilda, Mr. Peters, who was a corpulent man and about 70 years of age, arose and made his way toward the door and down the steps, and as he reached the ground he was thrown and severely injured.

The plaintiff testified in his own behalf that he was hindered in his efforts to get out by persons in the passage way and on the platform to enter the car: "And then just as I went to get down the steps I noticed the car was in motion; I am not certain whether it was on the first step from below or the second, so I made a spring to get out and jumped," when he was thrown upon his side down below the road. On cross-examination the witness said, "Just as I was going to step off the car it started and then I was too far and then I could not take myself back again." Geo. T. Jones testified: "He seemed when he got to the last step, as though he was going —he stepped as though he was afraid to go, but by that time he had got too far, and he stepped right off the end." Other witnesses corroborated the plaintiff. There was also testimony on the part of the plaintiff that the cars had stopped at the station 10 to 20 seconds only. On the part of the defendant there was testimony that the train had stopped its usual time about two minutes; and also that it had started while the plaintiff was moving along the passage way before he reached the door. It also appeared that the train was signalled to start by a brakeman and started when the engineer had not yet entered the cab, and that there were many passengers entering the train at that station, some of whom entered before the passengers stopping had alighted.

The testimony being closed the defendant requested the court to instruct the jury that, admitting the testimony of the plaintiff to be true, it showed he contributed to the injury complained of; that without his negligence in leaving the train when in motion the injury would not have happened; and that therefore he could not recover. The court refused the points of the defendant and *inter alia* charged as follows:—

The plaintiff alleges that his injury resulted from the negligence of the railroad company, this defendant. It was the

duty of the defendant to stop such reasonable time as was necessary for him to get off, and plaintiff in making an effort to get off, was bound to use reasonable diligence and promptness. If the train had not moved too soon, he alleges, he could not have been injured by getting off as he did. The defendant alleges that on this statement of undisputed facts the plaintiff was guilty of contributory negligence, and therefore cannot recover. Where the defendant has been negligent in the performance of what is conceded to be a duty and an injury has resulted, yet if the injured party by his negligence has contributed to the injury, there can be no recovery. The law will not undertake to measure the degree of negligence of the two parties, nor will it undertake to apportion the damages which have resulted from an injury that is occasioned by mutual negligence so that each shall bear his share. It says simply and peremptorily, where there has been negligence on the part of the defendant, and contributory negligence on the part of the plaintiff, and an injury has resulted, there can be no recovery.

The defendant, admitting it was the duty of the company to stop the cars a reasonable time to permit the passengers to get out, alleges that even if the train moved unreasonably soon, the plaintiff knew it was moving, and so knowing, got off. This, it is alleged, was an absence of ordinary care; because under the circumstances no man of ordinary care would step from or jump from a moving train.

If the admitted or undisputed facts were all the facts in the case bearing on this issue, we would without hesitation instruct you that, under the law, the plaintiff could not recover, because his own negligence contributed to the accident. Ordinarily it is negligence to get on or off a moving train, and one who does so and is injured cannot recover from the railroad corporation, no matter what may have been the negligence of the corporation. It is notorious that it is dangerous to get on or off a moving train; a man who voluntarily risks this danger and sustains injuries, is negligent, he does not show ordinary care; he shows absence of ordinary care if he performs the act voluntarily. The defendant alleges, the plaintiff's act being voluntary, the rule of law is applicable in this case. [It is true this is the general rule, but

Charge of Court below.

there are exceptions to it.    Whether this case comes under the general rule or is an exception, depends on whether there are other facts or circumstances in the case which rebut the presumption of negligence generally warranted by the mere fact of getting off a moving train.    Whether there be such facts in this case, we are clear, is a question for you and not for us.][6] . . . . . .

Now the first question here of fact for you to determine is, did the train stop such a reasonable time at Port Matilda as to permit him to get off safely; that is a question of fact and it is for you.    It was his duty when the train stopped to get up, proceed to the door and step off.    He could not sit still and thus consume the time which was given by the company to get off; nor could he linger on the way for conversation or to suit his whim.    The train stopped for passengers to get off. It was his duty to do so with reasonable celerity, considering his age; he was not bound to move with the same swiftness as a young, active man, for old persons have a right to reasonable time to get off a train at their destination as well as young persons.    Did the train stop such time as under the circumstances was sufficient?    There is not according to the evidence any fixed time to stop at any station.    It stops generally at Bellefonte five minutes, two minutes at Unionville, and two minutes at Port Matilda, but no fixed time according to the evidence.    The stoppage is timed by the amount of work to be done; that is, by the number of passengers to get on or off and the amount of baggage to put on or unload. Now the evidence on each side as to the time of stoppage you must consider.    That is the first question of fact for you.

[The court here reviews the testimony on both sides with reference to the time the train stopped at the station.]

If the train did not stop such reasonable time as was sufficient to enable Mr. Peters, moving with reasonable promptness, to get off while it was still standing, then was he guilty of negligence in getting off while it was moving.    [This is the next question.    In order to recover at all on the part of the plaintiff, he must establish negligence on the part of defendant to the satisfaction of the jury; but yet, after he has once done this, does the evidence show contributory negligence on his part; the burden then is on the defendant to show such con-

tributory negligence where such negligence is set up as a defence.] [7]

It is alleged here by the defendant that not only does the evidence of the defendant show contributory negligence, but that the plaintiff's own evidence shows such negligence. What does the evidence show? That is the second question for you in the case, should you find against the defendant on the first question submitted. The defendant alleges, the plaintiff in getting off a railroad car while it was moving, and when he knew it was moving, was guilty of contributory negligence. As we have stated, generally the presumption of negligence is warranted from this fact alone. But this is not always the case. It is dangerous to jump or step from a moving train. This is a fact known to all persons of ordinary intelligence. [If a man does voluntarily that which is generally accompanied by risk of life or limb, does that which a person of ordinary prudence would not do, therefore he is presumed to be negligent. But this is a presumption to be drawn by you. It is a presumption which may not be warranted in view of all the other facts surrounding the act. Circumstances attending may show that this presumption is not warranted in the particular case.] [8] A man may jump off the cars as a matter of safety; because of the position he occupies in the car it might be extremely hazardous to remain; for example, if a collision were imminent; or he may step off at the invitation or command of the conductor. It would depend upon the particular circumstances of the case as to whether this presumption is warranted. The defendant alleges, in this case, that the car commenced to move while Mr. Peters was still in the aisle, before he had reached the door. S. M. Hall, a witness for the defence, states that he was standing on the platform of the station and he noticed a man walking in the aisle; he noticed the same man coming down the steps, and while the man was walking in the aisle he noticed the train was then moving; that he saw him come out of the door and down the steps, step off and fall; that then the car had moved the length of itself. Mr. Thompson states that he was sitting in the front of the rear car; that he had got out and was standing on the platform of the station when the car started; that he saw no one get off; that the platform was clear when he came down; leaving the inference

Charge of Court below.

to be drawn that Peters, the plaintiff, was still in the car and must have been in when the train commenced to move.  Mr. Rumbarger, another witness for the defendant, testifies that he, the plaintiff, was about a foot past him when the train commenced to move.  He said he was sitting in the car; the witness did not get out; he says, he was about a foot past me towards the door when the train commenced to move.  Mr. Hardy, another witness who got on, testified that they met him right at the door; the "floating gang" had got on and they were entering the door when they met him.  The distance the car had moved, the length of it, when plaintiff fell, shows it must have commenced to move before he got to the door. Now the plaintiff in reply says, that as soon as the car stopped he, the plaintiff, got up and moved towards the door.  This is the testimony of the plaintiff; and he further states that he did not stop anywhere voluntarily, but some persons coming into the car obstructed the passage somewhat, and that he asked them to stand aside and they did so, and when he reached the steps, the lower step or second step from the last one, the car was then moving ; that he was met there on the platform or steps by these men coming in.  It is argued his first knowledge of the car being in motion was when he was on the steps. [One of the men who got on, Bennett, was going up as Peters came down, yet Bennett got on just before the car started. ][12] It is alleged by the plaintiff that the car had not moved until he got on the steps and if it had moved, the movement was imperceptible to plaintiff and others in the car but may have been noticed by those outside; that the motion might have been perceptible to those in their seats, but not to those standing on their feet, or those hurrying in or out ; especially would this be so, it is alleged, if their attention was absorbed in accomplishing the act of getting out or in.  The motion, it is alleged, would not have been perceptible to them in a hurry to get in or out of a car, or while going up or down the steps.

We have no hesitation in saying to you that, if the plaintiff was in the car in a place of safety when the car commenced to move, and he knew it had started while he was in the body of the car, ordinary prudence and care demands that he resume his seat and await the next stopping place.  It would be negligence, if not recklessness, to go from the inside of a car and

get off when he knew it had started from the station. It was negligence, if not recklessness,. to go out on the platform and jump from a moving train, or step from a moving train, if he started from his seat knowing that the train had started; nothing could have prompted him to this except the inconvenience of being carried to the next station, and being subjected to the trouble of going back. [But if the car was not moving, or, if moving, moved so slowly that he did not observe it until he got on the steps, then it is a question for you whether under the circumstances it was negligence in him to get off. What would a man of ordinary prudence have done under the same circumstances, would be the question, if he first noticed the train was moving when at the point he said he noticed it, on the second or lower step; not what a prudent man not in his situation might think ought to have done, but what ought to have been done under the circumstances, would be the question.][9] We all know that here, after coolly and dispassionately examining and weighing the evidence, and after hearing the narratives of the witnesses, that it would probably have been more prudent if he had gone back into the car. [But what would a prudent man have done standing on the car steps and just at that moment observing for the first time that the car was slowly moving?—Standing on the car steps and observing for the first time the car slowly moving, taking him away from his destination with the difficulty and danger, if any there were, of a man of his age and habit getting safely up the steps into the car?—What ought to have been done with these surroundings in the exercise of ordinary prudence? You are to judge of that.][10] If in the exercise of ordinary prudence he ought to have refrained from stepping off, then he was guilty of contributory negligence, and cannot recover. If he ought to have gone back into that car in view of all the evidence that has been submitted to you, he was negligent in not going back, and cannot recover. [If, however, situated as he was, he did that which a prudent man under the same circumstances, in the same situation, would have done, then no negligence can be imputed to him, and he can recover, if you find the company was guilty of negligence in not stopping the train a reasonable time, and his injury resulted therefrom.][11] You will consider all the evidence, gentlemen, bear-

ing on this question as to whether he was guilty of contributory negligence. We have not mentioned near all the testimony. You will consider all the evidence bearing upon this point so far as it is material. If, under all the evidence and instructions we have given you, you find the case is with the defendant, you have simply nothing more to do but to render a verdict for the defendant. But, if the case is with the plaintiff, under all the evidence and instructions we have given you, then it is your duty to ascertain the damages he is entitled to. Damages are of two kinds, vindictive and compensatory. . . . . .

Under this charge the jury found a verdict for the plaintiff for $3,000, and, a new trial being refused and judgment entered, the defendant company took this writ assigning for error:

1, 2, 3, 4, 5. The answers to the defendant's points substantially that the court should have instructed that the plaintiff was chargeable with contributory negligence and ought not to recover.

6. That part of the charge embraced in [ ] [6]
7. That part of the charge embraced in [ ] [7]
8. That part of the charge embraced in [ ] [8]
9. That part of the charge embraced in [ ] [9]
10. That part of the charge embraced in [ ] [10]
11. That part of the charge embraced in [ ] [11]
12. That part of the charge embraced in [ ] [12]

*Mr. Adam Hoy* (*Mr. Edmund Blanchard* and *Mr. Evan M. Blanchard* with him), for the plaintiff in error:

The defendant's points embraced in substance the well established legal consequences resulting from the act of the plaintiff in voluntarily jumping off a moving train. Even if it were true that the train did not stop long enough, the plaintiff was not excused from the results of his negligence: Penn. R. Co. v. Aspel, 23 Penn. St. 147; 2 Roh. Railroads, 1036, 1091, 1116; Penn. R. Co. v. Kilgore, 32 Penn. St. 292; Hagan v. Railroad Co., 10 W. N. 360; McClintock v. Railroad Co., 42 Leg. Int. 82; Lake Shore & M. S. R. v. Bangs, 3 Am. & Eng. R. C. 426; Harvey v. R. Co., 116 Mass. 173; Central R. & Banking Co., v. Letcher, 12 Am. & Eng. R. C. 115; P. & C. R. Co. v. McClurg, 56 Penn. St. 294; Pierce Railroads,

323; Washington v. B. & O. R., 10 Am. & Eng. R. C. 755; Creed v. Railroad Co., 86 Penn. St. 145; Passenger Railway Co., v. Boudrou, 92 Idem 475.   Under the authority of these cases, the court below should have declared the act of the plaintiff negligent and unjustifiable.

There can be no burden upon the defendant to show contributory negligence when the act of plaintiff is itself negligent: Baker v. Fehr, 10 W. N. 57; Phil. & R. R. Co. v. Yeager, 73 Penn. St. 124.   The instruction ought to have been that plaintiff was charged with knowledge, or regarded as knowing, if he had such warning and opportunities of knowledge as would with ordinary caution in those circumstances have saved him from the danger; Penn. R. Co. v. Henderson, 43 Penn. St. 449; Penn. R. Co. v. Henderson, 51 Idem 317; hence it was error to submit to the jury the question of what ought to have been done by a prudent man in plaintiff's situation.

*Mr. D. S. Keller* (*Mr. John H. Orvis* with him), for the defendant in error:

Where facts in evidence are disputed, and even where there is no doubt as to the acts committed, if there be substantial doubts as to the inferences to be drawn from these acts, the true rule is that they must be submitted to the jury: McKee v. Bidwell, 74 Penn. St. 225; Penn. R. Co. v. Barnett, 59 Idem 259; Johnson v. Bruner, 61 Idem 62; Crissey v. Railway Co., 75 Idem 86; Kay v. Railroad Co., 65 Idem 273; Penn. Canal Co. v. Bentley, 66 Idem 34; North Penn. R. Co. v. Kirk, 90 Idem 19; Lehigh V. R. Co. v. McKean, 90 Idem 122; Philadelphia & R. R. Co. v. Shultz, 93 Idem 341; Penn. R. Co. v. Fortney, 90 Idem 323; Murphy v. Crossan, 98 Idem 495; Schum v. Railroad Co., 107 Idem 9.

If a man without negligence have come into a position of danger, he is not responsible if he make a mistake of judgment in getting out.   In such circumstances, if he use his judgment honestly, he is not responsible, although he might have done better if he had acted differently: Penn. R. Co. v. Werner, 89 Penn. St. 59; Schall v. Cole, 107 Idem 1; Camden & Atl. R. Co. v. Hoosey, 99 Idem 495.

The ruling of the court below follows directly the rulings of

this court in Penn. R. Co. v. Kilgore, 32 Penn. St. 292; John-ston v. Railroad Co., 70 Idem 357.

The burden *is* on the defendant to show contributory negli-gence, *where such negligence is set up as a defence;* Penn. Canal Co. v. Bentley, 66 Penn. St. 34; C. & P. R. Co. v. Rowan, 66 Idem 393; Mallory v. Griffey, 85 Idem 275; Har-risburgh v. Saylor, 87 Idem 221; Brown v. Gilmore, 92 Idem 47; Penn. R. Co. v. Weber, 76 Idem 157; and it was for the jury to find it: Penn. R. Co. v. Weiss, 87 Penn. St. 447; Weiss v. Railroad Co., 79 Idem 387; Howard Express Co. v. Wile, 64 Idem 201; First N. B. v. Wirebach, 106 Idem 47.

As to the twelfth assignment of error: The court below did not pretend to be quoting the testimony of Bennett. From the testimony of Bennett and T. W. Fisher, taken together, it is evident the statement complained of was accurate. The fact that the court called Fisher "Bennett," could do the defend-ant no harm.

OPINION, MR. JUSTICE STERRETT:

Neither of the twelve specifications of error raises any ques-tion as to the sufficiency of the evidence to sustain the aver-ment of negligence on which the action is grounded; nor does either of them involve any question as to the admission or re-jection of evidence. They all, except the twelfth, relate exclusively to the subject of contributory negligence; and, as to that, the only inquiry suggested is whether it was a ques-tion of law for the court or one of fact for the jury. The learned judge of the Common Pleas, holding it was the latter, refused binding instructions and submitted the question to the jury as one of fact under all the evidence. In so doing he rightly adhered to the well established rule that whenever the standard of duty shifts, not according to any fixed rule, but with the facts and circumstances developed at the trial, the question of negligence cannot be determined by the court but must be submitted to the jury; Schum v. Penn. R. R. Co., 107 Penn. St. 8, 12; and Penn. R. R. Co. v. Coon, 111 Penn. St. 430, 440. Negligence is the absence of care according to the circumstances, and is always a question for the jury when there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them. When the measure of duty is ordinary

and reasonable care, and the degree of care varies according to circumstances, the question of negligence is necessarily for the jury : Penn. R. R. Co. v. White, 88 Penn. St. 327, 333. It is impossible to formulate a fixed rule of duty applicable to all cases. A course of conduct which under certain circumstances may be justly regarded as the exercise of ordinary care, would, under other circumstances, be gross negligence. The opportunity for deliberation and action, the degree of danger, and many other considerations of like nature, affect the standard of care that may be reasonably required in a particular case. While this is the general rule there are, of course, exceptional cases, in which the measure of duty is determinate—the same under all circumstances, as for example the inflexible rule of duty which requires persons, about to cross a railroad track, to stop, look and listen ; but, the case at bar is not within any of the recognized exceptions to the general rule, and hence there was no error in submitting the question of contributory negligence to the jury.

The evidence tended to prove substantially the following state of facts : The plaintiff, a large and corpulent man about seventy years of age, took passage on the train for Port Matilda station. The cars were well filled with passengers, but he found a seat at the forward end of the passenger compartment of the smoking car, about thirty-five feet from the door through which it was necessary for him to make his exit. As soon as the train stopped at Port Matilda he arose and made his way through the cars as speedily as possible, but when he reached the door he was delayed by a group of passengers who had boarded the train as soon as it stopped and before those desiring to leave had either time or opportunity to do so. He was obliged to push his way, as best he could, past those who obstructed the doorway and platform. When he reached the last, or next to the last step leading down from the platform, he discovered the train had commenced to move. The impetus acquired in leaving the car rendered it difficult, if not impossible, for him then to retrace his steps. Testifying as to his situation, when he first discovered the train was in motion, he says: " Then I could not take myself back again." In the language of one of the witnesses, " he seemed when he got to the last step as though he was going to stop ; he stepped as though he

was afraid to go, but by that time he had got too far and stepped right off the end." The result was that he was thrown upon the ground and sustained the serious injuries complained of. The train was held at the station an unusually short time —about twenty-five or thirty seconds. Those who wished to enter were permitted to do so before reasonable time or opportunity was allowed for passengers to safely leave the car.

The evidence was such as to justify the jury in finding these and other facts, warranting the conclusion of negligence on the part of the company defendant's employees and negativing the allegation of contributory negligence. In other words, the subjects of inquiry fairly presented by the evidence were defendant's negligence, on the one hand, and contributory negligence of the plaintiff on the other. Both of these were questions of fact exclusively for the consideration of the jury, and as such they were submitted in a clear and satisfactory charge. The controlling facts, as settled by the verdict, are that the injuries sustained by plaintiff resulted from the negligence of defendant's employees in starting the train before he had sufficient time and opportunity to alight in safety, and not from his own carelessness in leaving the car while it was in motion. For injuries thus sustained by a passenger the carrier company is undoubtedly liable : Penn. R. R. Co. v. Kilgore, 32 Penn. St. 292.

It is unnecessary to notice each assignment of error specially. The last specification is without merit. The jury could not have been misled by the mistake of the court in misnaming the witness to whose testimony reference was made. The remaining specifications all relate to the subject of contributory negligence, which, as we have seen, was properly submitted to the jury as a question of fact, under all the evidence. There is nothing in any of the specifications of error that would warrant a reversal of the judgment.

Judgment affirmed.