# Central District & Printing Telegraph Company, Appellant, *v.* Otis Elevator Company.

*Negligence—Evidence—Elevators—Case for jury.*

In an action by a telegraph company against an elevator company to recover damages for the destruction of property, it appeared that defendant was called upon to repair cable connections in an elevator belonging to a third party. In doing the work an employee of the defendant in order to melt metal, took a burning plumber's furnace into the shaft, placed it on a plank which he knew to be greasy, and during the progress of his work his foot slipped, struck the furnace and knocked it off the plank and it fell down the shaft and ignited the greasy covering of the wires of the plaintiff, and destroyed them. The presence of the wires and their condition was known to the defendant's employee. There was evidence that the work could have been done without taking a lighted furnace into the shaft. There was also evidence that the defendant's employee had been warned by the superintendent of the building not to take the furnace into the shaft. *Held,* that the case was for the jury, both on the question of defendant's negligence, and the question of proximate cause.

Argued April 22, 1912. Appeal, No. 130, April T., 1912, by plaintiff, from order of C. P. No. 3, Allegheny

650  CENTRAL D. & P. T. CO., Appellant, *v.* OTIS EL. CO.

Statement of Facts—Opinion of the Court.  [54 Pa. Superior.Ct.
Co., May T., 1909, No. 46, refusing to take off non-suit in case of Central District & Printing Telegraph Company v. Otis Elevator Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Reversed.

Trespass to recover damages for injuries to property. Before EVANS, J.

See 50 Pa. Superior Ct. 230.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*James S. Crawford,* with him *Patterson, Sterrett & Acheson,* for appellant.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY RICE, P. J., October 13, 1913:

In this action of trespass the plaintiff sued to recover damages for the destruction by fire of its cables and wires alleged to have been caused by the negligence of the defendant.  The case comes before us by appeal by plaintiff from the court's refusal to take off the judgment of compulsory nonsuit which was entered on the trial. The ground upon which the court based its decision was that the evidence was insufficient to warrant the jury in finding negligence on the part of the defendant.  In testing the correctness of that conclusion, the plaintiff must be given the benefit of every fact and inference of fact, essential to recovery by it, which might have been found by the jury, or rationally drawn by them from the testimony before them.  After full and deliberate consideration of the evidence, in the light of this well-settled principle, the case having been twice argued, we are constrained to the conclusion that the case should have been submitted to the jury.

The plaintiff owned and maintained, in the elevator shaft of a building belonging to another, two lead sheathed cables, each comprising many telephone wires. The owner of the building engaged the defendant to make certain repairs to the elevator, which included changes in the elevator rope or cable. This steel cable and connecting apparatus, as well as the telephone wires, were in what is called the "cylinder" shaft, to distinguish it from the part of the shaft in which, when the elevator was in use, the car moved up and down. The car shaft was between five and six feet deep from front to back; and immediately back of it was the cylinder shaft, which was about three and one-half feet deep from front to back. In the course of the repairs spoken of, it became necessary to lengthen the elevator rope, or cable, by putting in a longer shackle rod, and to do that it was necessary to melt the babbitt metal by which the rope was soldered into the shackle. With this purpose in view, Harry Lardner, the defendant's employee in charge of the work, went to the eighth floor of the building, crossed the car shaft on a plank, and, after entering the cylinder shaft, stood on a plank two inches thick, ten inches wide, and about four feet long. He took with him, to be used in melting the babbitt metal, a plumber's gasoline furnace, lighted and burning, and set it on this plank. The plank was greasy, and because (as the jury could have found) of its greasy and slippery condition his foot slipped as he was engaged in his work, hit the bottom of the furnace and toppled it over into the shaft. Lardner testified that the plaintiff's cables and wires were covered with grease and dust that had accumulated for years, and, being asked what happened as a result of the gasoline furnace falling down the hatchway, he said: "Well, a very few minutes after that I saw a blaze coming up the hatchway, up along the telephone wires. That is the only thing that was flammable there that I saw, the whole hatchway."

Having stated in brief outline how the fire was oc-

casioned, it becomes important to call attention to certain facts which either were undisputed or could have been found by the jury, and which appellant's counsel correctly argue are pertinent to the question for decision.

Lardner had often worked in the shaft before. He knew the location of the plaintiff's cables and wires in close proximity to the place where he was working, and also knew of their inflammable condition by reason of the accumulation of grease, oil, and dust upon them. In addition to his admitted knowledge of the location and condition of the wires, it was shown that he was expressly warned by the superintendent of the building not to take the gasoline furnace into the shaft.

While the evidence does not show that according to the usages of the trade there was a fixed and unvarying method of making such change in an elevator cable as the defendant had undertaken to make, there was evidence coming from witnesses, whose training and experience made them competent to testify on the subject, that there was a method of making the change without taking the gasoline furnace into the shaft, and that was by loosening the shackle rod from its fastenings, taking the shackle rod and rope out into the corridor of the building, and there melting the former loose from the latter. It may be, as counsel for defendant argue, that the method adopted by Lardner was the more convenient one; but it is quite clear that the jury would have been warranted in finding, from the evidence, that the other was not an unusual method, that it was reasonably practicable, and that it was, under all the circumstances, the safer method.

It was said by the learned trial judge, in overruling the motion to take off the compulsory nonsuit: "There was no direct danger to the plaintiff's property, or to any other property from the mere taking of the furnace into the elevator shaft. The mere presence of the fire in the shaft would ignite nothing and injure nothing.

It required an accident similar to the one that occurred in this case in order that damage might be done." This, as it seems to us, is not as broad a view of the case as the pleadings and evidence warrant. The plaintiff's case does not depend exclusively on the proposition that the defendant's employee incurred an obvious and avoidable risk of injury to the plaintiff's property by taking the lighted and burning furnace into the cylinder shaft, and, in view of the inflammable conditions, was guilty of negligence in so doing. We are not willing to concede that the court would have been justified in declaring to the jury that this was not a negligent act. There would be more plausibility in the contention that, in the absence of other evidence, it was not the proximate cause of the specific injury complained of. But there was other evidence of a very significant character, in addition to the evidence that Lardner might have done the work without taking the furnace into the shaft at all. As to the condition of the plank, he testified as follows: "I stood on a plank that was in there, been in there some time. I don't know whether it was put in there at the time the building was erected, or when it was put there. Q. Was it greasy? A. Yes, had some grease on it; couldn't help but be greasy in that cylinder shaft, grease falling down from the cylinder shafts and everything. Q. Always greasy? A. More or less grease coming down there. Of course, we wipe it off sometimes, have a piece of waste and wipe it off, so it don't get too greasy. Q. Did you do that in this case? A. I don't know whether I did or not. It has been so long ago I don't remember. Q. Do you remember doing it? A. I remember cleaning grease off often. Q. Do you remember cleaning grease off in this instance? A. I couldn't recollect that." It is fairly inferable from this and other testimony, that he might have cleaned off the grease; or, if that could not be so thoroughly done as to make it safe to stand on the plank, there is nothing to show that he might not have

put in another plank that was free from grease. Without taking either of these precautions, he set the furnace at his feet on this narrow plank which he knew to be slippery—a position where as the result of a slight miscalculation of distance in moving about, or the slipping of his foot, the furnace might be toppled over into the shaft and thus set fire to the inflammable material known to be there. True, the slipping of his foot was an accident in the sense that it was not a consciously designed and premeditated act. But was it the province of the court to declare that it was one of those improbable occurrences that a man of ordinary prudence, with knowledge of the surrounding conditions, ought not to be expected to foresee as likely to happen? We think not. Such instruction would be to substitute the judgment of the court for that of the jury, upon a question, not of law, but determinable by "observation and experience which are the common inheritance of intelligent men." It may be conceded that one charged with the duty to exercise ordinary care is not required to anticipate the improbable. As counsel for the defendant correctly say, the failure to foresee and provide against every possibility of accident, no matter how remote or improbable, does not constitute negligence where ordinary care is the standard of duty. But it is not the law, that the one charged with that duty need only anticipate and provide against occurrences which he positively knows will happen. The true rule was thus expressed by Justice AGNEW in McGrew v. Stone, 53 Pa. 436: "But when we are engaged in an act which the surrounding circumstances indicate may be dangerous to others or their interests, and when the event whose concurrence is necessary to make our act injurious, is one which we can readily see may occur under these circumstances, and unite with the act to inflict an injury, we are culpable if we do not take all the care which prudent circumspection would suggest to avoid the injury." Therefore, we cannot agree with the learned

trial judge in his conclusion that "the happening of the accident" (that is, the slipping of Lardner's foot, striking the furnace and pushing it over into the shaft) "is practically the only evidence as to the probability of an accident." On the contrary, we are of opinion that a jury might rationally find, from the facts as they presented themselves to Lardner when he set the lighted and burning furnace on this narrow, greasy plank, that the very thing that happened was one of those occurrences which a man of ordinary prudence, with knowledge of the surrounding conditions, could foresee as likely to happen; in other words, that this was one of those dangers to be considered in determining what his conduct should be. Conduct justly regarded as the exercise of ordinary care under some circumstances, would exhibit the grossest degree of negligence under other circumstances; the opportunity for deliberation and choice of action, "the degree of danger," and many other considerations of a like nature, affect the standard of care which may be reasonably required in a particular case: Schum v. Penna. R. R. Co., 107 Pa. 8; Penna. R. R. Co. v. Peters, 116 Pa. 206. "It varies with the danger:" McCully v. Clarke, 40 Pa. 399. According to the familiar doctrine of these and many other cases, when the measure of duty is ordinary and reasonable care which varies with the circumstances of the case it must be submitted to the jury to determine what it is, and whether it has been observed: Thorne v. Phila. Rap. Tr. Co., 237 Pa. 20. This case is not an exception to the general rule. A finding of negligence would not rest on mere inference from the happening of the accident, but upon affirmative evidence of omissions and acts which the jury could rationally find were inconsistent with the exercise of due care.

Upon the subject of proximate cause it has pertinently been said: "It is not the law, that men are responsible for their negligence only to the extent of the injuries which they knew would result from it. If it were, there

could be no recoveries except for malicious wrongs:" BLACK, C. J., in Pittsburg v. Grier, 22 Pa. 54. The statement of the rule in Hoag v. Lake Shore & Mich. Southern R. R. Co., 85 Pa. 293, which has been frequently quoted in the Pennsylvania decisions, is, "that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstance of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." What we have said upon the question of negligence applies also to the question of proximate cause, and leads to the conclusion that both questions should have been submitted to the jury.

The judgment is reversed and a venire facias de novo is awarded.