CATE v. GOOD BROS., Inc.

No. 10078.

United States Court of Appeals
Third Circuit.

Argued March 6, 1950.

Decided April 7, 1950.

Rehearing Denied April 28, 1950.

Samuel Kagle, Philadelphia, Pa. (Oscar Brown, Philadelphia, Pa., on the brief), for appellant.

Langdon W. Harris, Jr., Philadelphia, Pa. (Peirce A. Hammond, Jr., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE, Circuit Judge and LEDERLE, District Judge.

HASTIE, Circuit Judge.

The diversity of the citizenship of the parties has made this controversy concerning the sale of quantities of cheese the business of the courts of the United States.

In the district court the plaintiff seller was awarded damages measured by the agreed price of the merchandise under the terms of an alleged contract with the defendant buyer. Judgment was entered pursuant to the answers of a jury to special interrogatories propounded under Rule 49 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This appeal raises questions concerning the acceptance of part performance as satisfaction of the Statute of Frauds, an attempted repudiation of the original agreement, the merchantable quality of the goods, the conduct of the trial judge in submitting interrogatories and the propriety of sundry trial rulings and statements.

There is also presented the matter of an alleged agreement of compromise or settlement. The trial court found that such an agreement had been made and was binding.[1] If that conclusion is sustained, the questions raised concerning the making and breach of the contract of sale need not be decided. Therefore, the effect of this supervening transaction will be considered first.

After the cheese had been delivered to the buyer in November 1946, there ensued a period of controversy concerning its quality. This led to a meeting on January 9 and 10, 1947 of Mr. Maron representing the seller, Messrs. Good and Friedel representing the buyer, and Mr. Gentner, a broker, who negotiated the sale. They discussed their problem and particularly the possibility of the return of substantial quantities of cheese to the seller. Concerning this meeting, the jury made only the negative finding that Maron did not agree "that he would accept the return of the cheese and make no further claim against the defendant in respect of it". Whether the parties reached any agreement at this conference is sharply controverted. In any event, shortly after the meeting the seller sent the buyer a letter dated January 11, which the buyer claims to have received on January 15. The text of that letter is as follows:

"Reference is made to the conversation Mr. R. G. Maron had with Mr. Sam Good.

"We understand that you are going to place at our disposal certain quantities of Prins Hendrik Blue Mild with public storage warehouses in Baltimore, Washington and Philadelphia, in addition to the quantity returned to Spring Green. Mr. Maron made it clear that such action on your part does in no way affect our rights for full

---

1. The legally significant acts occurred in Pennsylvania and the law of that state is controlling. However, questions of fact aside, the matter in dispute is the interpretation of particular language for which we find no guidance in decisions of Pennsylvania courts.

compensation according to our invoices previously rendered.

"We shall attempt and possibly complete resale of the Blue Mild referred to, and of the 265 Bundles of Alkmaar with bacon in storage in Philadelphia, and shall give you credit for the net proceeds as received, requiring you to pay the balance forthwith."

■ Pursuant to its power under Rule 49(a) to make findings on issues not covered by the special interrogatories, the court found as a fact, and there is testimony adequate to support the finding, that "after receiving the letter the defendant delivered the Blue Mild [cheese] to the plaintiff". The court further found "that Good [buyer] intended to and did accept the terms of Maron's [seller's] letter of January 11, by placing the Blue Mild cheese at plaintiff's [seller's] disposal". The record establishes no tender by the seller to take back the cheese except upon the terms of this letter. Thus the buyer's conduct appears to be an unambiguous response to the seller's letter. The finding that the letter of January 11, was an offer and the return of the cheese an acceptance of that offer is a reasonable construction of this language and behavior. We find no basis for disturbing it.

■ The trial judge also construed this transaction as a "contract by which the parties settled the defendant's disputed liability and provided a method of ascertaining its amount". We think this construction is reasonable and we sustain it. In one sentence of the letter of January 11, the seller states that the proposed return of the cheese "does in no way affect our rights for full compensation according to our invoices previously rendered". Standing alone this language would be equivocal since it might mean merely that the seller would continue to assert a claim for invoice prices without the buyer agreeing to the validity of such a claim. However, the next sentence, and particularly the phrase that the seller will give the buyer "credit for the net proceeds [of resale] as received, requiring you [buyer] to pay the balance forthwith" shows the intendment that the cheese be treated as the buyer's property acquired at the price

stipulated in the original agreement. Considering the communication as a whole, we agree with the trial judge that it is fairly construed as an offer of the seller to take back the merchandise and to assume the responsibility of disposing of it to the buyer's credit in consideration of the buyer's agreement, to be made manifest by his shipment of the cheese, to pay the difference between the invoice prices and any resale credit.

■ We have not overlooked the buyer's contention that the seller's letter of January 11, was a self-serving declaration and therefore inadmissible to prove any agreement at the meeting of January 9 and 10. But, on an entirely different theory, the letter was clearly admissible as a document embodying an offer. Such a document is not admitted for the probative value of the statements it contains but as an act of primary legal significance in the making of a contract.

Our conclusion on the issue of compromise makes it unnecessary to consider questions presented and argued concerning the making and breach of the original contract of sale.

The remaining questions concern the conduct of the trial.

■ Appellant noted certain exceptions with reference to the submission of interrogatories. At the outset, it is pertinent to observe that the practice of submitting special interrogatories under Rule 49(a) is salutary and to be encouraged, particularly in cases such as this where interrogatories, unlike a general verdict, assure and make explicit decision upon several issues which must be resolved before a proper disposition can be made of the case.

■ Appellant's principal objection is in the nature of a claim of surprise which arises out of the fact that the court did not announce its intention to submit interrogatories or give counsel the text of the proposed questions until the trial was in progress and well advanced. This objection is sufficiently answered by the fact that although the proposed interrogatories were submitted to trial counsel on March 17 with a view to decision on final text the same day, counsel actually had until March 22, to consider any objections or counterpropos-

als. Moreover, when the matter was considered in open court on the 22nd, counsel for appellant made this statement: "If your Honor please, since these interrogatories were submitted to us on Thursday afternoon, I have had an opportunity to examine them at some length and square them with the testimony in the case; and I therefore respectfully move that the interrogatories prepared by the Court to be submitted to the jury be amended in the following particulars."

The interrogatories were then modified in accordance with suggestions of counsel. In these circumstances, the objection of surprise and insufficient time has no merit.

■■ Appellant also complains that instructions explanatory of the special interrogatories and the jury's duty in answering them were inadequate. In view of our conclusion with reference to the agreement of compromise, it will be necessary to consider only those interrogatories which refer to that transaction and to the determination of damages. Those interrogatories and the jury's answer were as follows:

"7. At the conference between the parties in Philadelphia on January 10, 1947, did Mr. Maron agree that he would accept the return of the cheese and make no further claim against the defendant in respect of it?

"No.

"8. Did the plaintiff in good faith endeavor to sell, at fair prices and within a reasonable time, the cheese placed at its disposal by the defendant?

"Yes.

"9. What were the gross amounts which the plaintiff received from sales of Blue Mild and Alkmaar with bacon, which it made after the cheese involved in this suit was placed at its disposal?

"a. Sales of 19,928 pounds of Blue Mild? $4,746.92

"b. Sales of 4,416 pounds of Blue Mild? $1,455.53

"c. Sales of 9,600 pounds of Alkmaar with bacon? $3,307.31.

"10. What reasonable expenses and charges did the plaintiff incur in connection with the reprocessing and sale of the cheese?

"a. On sales of 19,928 pounds of Blue Mild? $1,781.75

"b. On sales of 4,416 pounds of Blue Mild? $411.67

"c. On sales of 9,600 pounds of Alkmaar with bacon? $962.75."

The only substantial point made by the appellant with reference to so much of the charge as covered these interrogatories is that the court should have specifically directed the attention of the jury to the existence and nature of the legal obligation of the seller to mitigate damages through the use of all diligence in disposing of the cheese returned to him at the best available prices. But the procedure of special interrogatories leaves to the trial judge the responsibility of applying appropriate legal principles to the facts found by the jury. Interrogatory No. 8 stated clearly and adequately the issues of fact concerning the conduct of the seller in accomplishing the resale of the cheese. It was for the court to decide on the jury's answer to this interrogatory whether the obligation to mitigate damages had been discharged. The jury did not require information or guidance concerning the legal principles which the judge would apply to their findings.

■ Appellant also contends that he was prejudiced by "the act of the court in limiting and disparaging cross-examination in the presence of the jury". We have examined the record carefully and minutely. The objection relates to the cross-examination of the witness Maron, the principal representative of the seller. Cross-examination was long, detailed, and in places repetitious. A full and fair opportunity was given counsel to cross-examine on all material points. The court did interrupt counsel and did limit the continuation of cross-examination. In this action we find no more than an attempt to avoid the pointless protraction of questioning. We are unable to find that counsel was thereby prevented from full and adequate examination of the witness and testing of the evidence he had presented. The fairness of the trial judge is emphasized by the fact that after

cross-examination of this witness was ended, counsel was permitted to recall him for even further cross-examination.

We have also examined all comments of the judge which were in any way critical of statements made or questions put by counsel. Neither individually nor in their entirety do such comments reveal bias. They were not such as are calculated to prejudice the minds of the jury. They were well within the limits of the control which a trial judge properly exercises in order that the progress of the trial may be orderly and expeditious and the jury not be misled or confused.

All other points urged in the brief of the appellant, including the measure and proof of damages, have been reviewed. We find it unnecessary to discuss them with particularity. We are not persuaded that they reveal reversible error.

The judgment will be affirmed.