Frank **LOBIANCO**, a minor, by his natural Guardians, Christine M. Lobianco and Valentine Lobianco, and Christine M. Lobianco and Valentine Lobianco, in their own right

v.

**VALLEY FORGE MILITARY ACADEMY** (Foundation), a Pennsylvania corporation

and

**United States of America.**

Civ. A. No. 24531.

United States District Court
E. D. Pennsylvania.

Dec. 6, 1963.

Norman Shigon, Philadelphia, Pa., for plaintiffs.

Howard R. Detweiler, Philadelphia, Pa., for Valley Forge Military Academy.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

KRAFT, District Judge.

The plaintiff parents brought this action in their own right and as guardians of their minor son to recover damages for injuries sustained by the minor plaintiff, while he attended Valley Forge Military Academy (Valley Forge) as a student cadet. Jurisdiction of their claim against Valley Forge is founded on diversity of citizenship. Their claim against the United States is based on the Tort Claims Act.

In the suit against Valley Forge, at the close of the evidence, we dismissed the parents' claim for want of the requisite jurisdictional sum. We submitted the minor's claim to the jury, which returned a special verdict in the form of answers to written interrogatories, upon which judgment was entered for Valley Forge.

In the action against the United States, we made specific findings of fact and conclusions of law, finding in favor

of the United States, and judgment was entered accordingly.

Plaintiffs filed motions for judgment n. o. v. and for new trial as to both defendants. At oral argument, however, their motions for judgment n. o. v. were withdrawn, leaving for present consideration only the motions for a new trial.

The facts which gave rise to this action may be briefly stated. Early in 1955, the United States loaned to Valley Forge, under certain conditions and regulations, ten M–20 light armored cars for use in connection with the ROTC program, which had been established at Valley Forge in 1929. In the afternoon of May 15, 1956, a number of these armored cars were parked in front of the Valley Forge "arsenal" in a column, with a space of five to ten feet between the front of one vehicle and the rear of the vehicle ahead. The minor plaintiff, then in his seventeenth year, was a designated "driver" of one of the armored cars, and Keating, a fellow cadet, was his designated "assistant driver". The minor plaintiff directed Keating to get into the car and start the motor. Keating started the motor when the plaintiff was standing directly in front of the car. For some reason, not altogether clear, the car lunged forward pinning the plaintiff against the rear of the vehicle ahead, and inflicting serious injuries in the region of his upper thigh and groin.

We shall consider first the motion for a new trial as to Valley Forge.

The parent plaintiffs contend that the trial judge erred in dismissing their claim against Valley Forge. While the question is now academic, in view of the jury's special finding that Valley Forge was not negligent, we think plaintiffs' argument warrants an answer.

"In an action of trespass to recover damages suffered by a minor, the minor plaintiff is entitled to damages for pain and suffering and probable loss of earnings after he reaches his majority, while his parents are entitled to damages for medical expenses they have incurred and will incur because of their son's injury and for their loss of his services during minority." Schmidt v. Kratzer, 402 Pa. 630, 168 A.2d 585 (1961). There can be no recovery for loss of companionship. Quinn v. City of Pittsburgh, 243 Pa. 521, 525, 90 A. 353 (1914).

Immediately after the accident on May 15, 1956, the minor plaintiff was taken to a hospital where he underwent extensive surgery. He was discharged from the hospital on June 2 or 3, 1956, and remained at his home until late August of the same year, when he returned to Valley Forge as a student cadet. The evidence indicates that thereafter he led a normal life and engaged in his usual activities, although he has complained at times of coldness and numbness in the injured parts. He graduated from Valley Forge in 1959, and has since been engaged in business.

The evidence established that the parent plaintiffs expended $1519 for medical expenses in connection with their son's injuries. There was not a scintilla of evidence bearing on loss of their son's services or of their value. There was no evidence that he had ever rendered, or was expected to render, any services. Judging from the obvious social status and mode of living of this family, it would not appear that there was any element of lost services in the case. If it be argued that the parents were entitled to recover for the loss or impairment of their son's *capacity* to render service, there was no evidence to show how long such incapacity existed after his discharge from the hospital on June 2 or 3, 1956.

■ As has been noted, the accident occurred on May 15, 1956. All of the medical expenses were incurred within the next few weeks, and the minor plaintiff resumed his normal way of life within the following three or four months. This action was instituted on April 22, *1958*, at which time the parents' pecuniary loss had been definitely established for at least a year and a half. Counsel well knew, when he began this action, that the parents' loss was scarcely more than half of $3000, and that there was no bona fide expectation of further prov-

398

able losses which would materially increase their claim. Nonetheless, counsel filed the parents' claim in utter disregard of the minimal amount then required to be in controversy. We are not unfamiliar with the devices contrived at times to invoke this court's jurisdiction, nor with impelling reasons therefor, but it is idle, in our view, to argue in the present circumstances that the parents' action was brought in good faith.

■ We conclude that the parent plaintiffs' claim was properly dismissed. Where the evidence fails to establish the requisite jurisdictional amount so as to sustain Federal jurisdiction, the District Court should dismiss the complaint for want of jurisdiction. Giordano v. Radio Corporation of America, 183 F.2d 558 (3rd Cir. 1950).

The minor plaintiff now contends that the trial judge erred in submitting to the jury interrogatories now characterized as calling for conclusions of law or mixed questions of law and fact, rather than interrogatories calling for facts upon which negligence or contributory negligence might be predicated.

Counsel, during argument, persisted in misconceiving the procedure employed in submitting this case to the jury. The case was given to the jury for *special* verdict under Rule 49(a), and *not* for a *general* verdict accompanied by answers to interrogatories, under Rule 49(b), of the Federal Rules of Civil Procedure. Counsel's misconception is extraordinary, since the "Commentaries" to Rule 49, in 28 U.S.C., at p. 434, warn against just such confusion.

■ The relevant interrogatories and the jury's answers thereto were as follows (omitting those which dealt with causation and were unanswered, absent a finding of negligence):

"1(a) Was the defendant, Valley Forge Military Academy, negligent? No.

"2(a) Was Frank Lobianco negligent? No."

These interrogatories were eminently proper, both as to form and content. In McCandless v. L. G. DeFelice & Son, Inc., 144 F.Supp. 462 at p. 464 (D.C.W.D. Pa.1956), where similar interrogatories were submitted, the Court stated:

"Plaintiff's contention that the court's submission of interrogatories to the jury was improper since such questions pose questions of law rather than questions of fact is, in my judgment, without merit. The court in its charge most exhaustively explained the factual basis underlying the answer to each interrogatory. It is pertinent to observe that the practice of submitting such interrogatories under Rule 49 (a) of the Rules of Civil Procedure, 28 U.S.C. is salutary and to be encouraged, particularly in cases such as this where interrogatories, underlying a general verdict, assure and make explicit decision upon several issues which must be resolved before a proper disposition can be made of the case. Cate v. Good Bros., 3 Cir., 181 F.2d 146."

The interrogatories submitted in the instant case were more precise and specific than those approved by our Court of Appeals in Halprin v. Mora, 231 F.2d 197 (3rd Cir. 1956).

■ Whether a finding as to the existence or nonexistence of negligence be deemed a conclusion of law or a mixed finding of law and fact, it is clear that in the vast majority of cases the matter is one for the jury. For a clear statement of the rule, see Pennsylvania R. Co. v. Peters, (1887) 116 Pa. 206, at pp. 215–216, 9 A. 317, at p. 318:

"Negligence is the absence of care according to the circumstances, and is always a question for the jury when there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them. When the measure of duty is ordinary and reasonable care, and the degree of care varies according to circumstances, the question of negligence is necessarily for the jury. Pennsylvania R. Co. v. White, 88 Pa.St.

[327] 329, 333. It is impossible to formulate a fixed rule of duty applicable to all cases. A course of conduct which, under certain circumstances, may be justly regarded as the exercise of ordinary care, would, under other circumstances be gross negligence. The opportunity for deliberation and action, the degree of danger, and many other considerations of like nature, affect the standard of care that may be reasonably required in a particular case."

In Whitfield v. Earl E. Knox Company, 144 F.Supp. 244, 246 (W.D.Pa. 1956), the Court expressed a like view in different language:

"Where uncertainty as to the existence of negligence arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury."

A cogent and perceptive statement of the principle is found in President Judge Keller's opinion in Foster v. Sol Greisler & Sons, Inc., 1942, 150 Pa.Super. 509 at p. 511, 29 A.2d 103, at p. 105:

"In a negligence case the function of the jury is not merely to determine the basic facts upon conflicting evidence; it is the jury's function to determine the appropriate rule of conduct for the particular circumstances found to have existed."

Discussion of this subject is complicated by the fact that the law itself is a fact,—in the sense that everything in the cosmos is a fact or phenomenon. Certainly, the jury must accept the law given it by the Court as a fact. It is reasonable to opine, therefore, that the jury's finding of "no" negligence constitutes an ultimate finding of fact.

We perceive no error in the form of the interrogatories submitted to the jury.

Plaintiffs' next complaint is that the trial judge erred in amending, correct-ing, or moulding the verdict after the jury had been discharged.

The trial judge neither amended, nor corrected, nor moulded the verdict. While he did speak of "moulding" the verdict, he used the term not in its technical connotation, but rather as a short-hand expression to indicate his compliance with the mandate of Rule 58 of the Federal Rules of Civil Procedure.

" * * * but the court shall direct the appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49."

The trial judge's choice of language presupposed counsel's familiarity with the provisions of the relevant Rules of Civil Procedure.

Plaintiff next contends that the jury's findings in answer to the interrogatories "indicate that these findings are irreconcilable, and, in the alternative, that the jury was confused."

This argument reflects the same basic misconception of the procedure employed in submitting the case to the jury that has been noted in an earlier part of this opinion. We need not repeat what we have already said. The jury's findings were entirely consistent, and indicate a thorough understanding of the issues submitted to it.

Plaintiff next complains that the trial judge erred in refusing plaintiff's first point for charge, which was as follows:

"The defendant-institution, VALLEY FORGE MILITARY ACADEMY (FOUNDATION), did have a non-delegable absolute duty and responsibility to make certain that proper precautions were taken to prevent Army supplies and equipment, including the M–20's causing the injuries to the minor plaintiff herein, from being improperly used and from falling into the hands of irresponsible and unauthorized persons. Such duty or obligation came upon the defendant-institution by

reason of Army Regulation 145–420, paragraph 4, which states:

" '4. RESPONSIBILITY OF INSTITUTIONAL AUTHORITIES—Institutional authorities are responsible for supplies and equipment placed in their custody under the provisions of these regulations, and in the exercise of this responsibility are charged with insuring that proper precautions are taken to prevent arms, ammunition, equipment, and supplies from being improperly used, and from falling into hands of irresponsible and unauthorized persons.' "

Briefly stated, plaintiff contends that the quoted portion of the Army Regulation constituted a contract between Valley Forge and the United States; that Valley Forge breached that contract; and, that plaintiff was a third-party beneficiary entitled to recover damages for such breach.

■ The trial judge's refusal of the point was justified on any one of three discrete grounds:

(1) Plaintiffs' claim against Valley Forge was based simply and only on negligence. If plaintiff intended to assert a claim for breach of a contractual duty, he should have pleaded it. Rule 8 of the Federal Rules of Civil Procedure provides that the complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the Federal Rules of Civil Procedure the function of the complaint is to afford fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved. Continental Collieries v. Shober, 130 F.2d 631, 635 (3rd Cir. 1942).

(2) In Mowrer v. Poirier & McLane Corp., 382 Pa. 2, 5, 114 A.2d 88, 89 (1955), the Court stated the general rule applicable to the creation of third-party rights under a contract:

"To be a third party beneficiary entitled to recover on a contract * *

both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself: * * *."

■ A careful study of the Regulation persuades us that it was intended to create, and did create, an obligation on the part of Valley Forge to the United States alone. The clear meaning and intent of the language was to charge Valley Forge with responsibility to the United States for the care and use of supplies and equipment placed in its custody pursuant to the Regulation. Nothing therein suggests that the provision was intended for the benefit of third parties. It follows that plaintiff was not a third-party beneficiary entitled to claim rights under the contract.

(3) Finally, there is no evidence that Valley Forge ever breached its duties under the contract. There is no evidence that Valley Forge ever permitted arms, ammunition, equipment, or supplies to be improperly used, or to fall into the hands of irresponsible and unauthorized persons. We do not understand plaintiff to contend that he and his fellow cadets were irresponsible and unauthorized persons, or that they were using the armored cars for an improper purpose.

■ Plaintiff further contends that the trial judge erred in refusing his third point for charge. This point embodied § 343, Restatement, Torts, which relates to the liability of a possessor of land for bodily harm caused to business visitors by a natural or artificial condition on the land. The point obviously had no application under the evidence. The bodily harm here was caused by a chattel, not by a natural or artificial condition on the land, as that term is used in the Restatement.

Plaintiffs' next complaint is that the trial judge erred in refusing his fourth point for charge, which was as follows:

"In permitting children to use, operate, and test armored cars, such as the 8-ton M–20's involved in the accident out of which this cause of action arose, the VALLEY FORGE MILITARY ACADEMY owed a duty to make certain that a proper and adequate standard of safety was provided in the installation and maintenance of such devices for the use of children."

■ In our view the point, as drawn, was likely to confuse the jury. The phrase "owed a duty to make certain" carries with it a connotation of absolute liability, inconsistent with plaintiffs' second point which was affirmed and read. The second point stated, in essence, that Valley Forge was liable if it failed in its duty, owed to the cadets, "to supervise the activities of the Academy and the student-cadets attending the Academy in a proper, adequate, and non-negligent manner." This gave the plaintiff all that he was entitled to, and the refusal of plaintiffs' fourth point was not error.

Plaintiff urges two additional grounds for a new trial. We have considered them carefully, and find them so devoid of merit as not to warrant discussion.

Accordingly, the plaintiffs' motion for a new trial of their action against Valley Forge will be denied.

We turn now to consideration of plaintiffs' motion for a new trial of their action against the United States.

The trial judge found, as fact, that there was no mechanical defect or failure in the M–20 armored vehicle that struck the minor plaintiff; and concluded as a matter of law that the United States was not negligent.

Plaintiffs contend that the trial judge erred in failing to find as a fact and to conclude as a matter of law, as follows:

"The UNITED STATES OF AMERICA, in the instant case, was in the position of a bailor of the armored cars, the M–20's, and, in the absence of a special contract of representation, it owed an obligation or warrant, similar to the implied warranty of fitness in the sale of personalty, that the thing or property hired for use shall be reasonably fit for the purpose, or be capable for the use known to be intended, that is, that it shall possess the qualities usually belonging to things of that kind when used for the same purpose, and the bailor, the UNITED STATES OF AMERICA, is liable to persons using the thing or chattel bailed at the bailee's invitation for injuries caused by reason of the thing's not being in proper condition when delivered or being fit and suitable for the purpose for which it is to be used."

■ Plaintiffs brought this action against the United States under the Tort Claims Act, basing their claim on negligence. They made no claim sounding in assumpsit, based on a breach of implied warranty of fitness. The requested finding, therefore, had no possible application.

The request was inappropriate for the further reason that the trial judge found, on adequate evidence, that there was no mechanical defect or failure in the armored vehicle that struck the minor plaintiff.

Plaintiffs' next complaint is that the trial judge erred in failing to find as a fact and to conclude as a matter of law, as follows:

"Where, as here, the UNITED STATES OF AMERICA knew that children were to use the chattel or thing bailed, to wit, the M–20 armored cars, and the UNITED STATES OF AMERICA continued to maintain the said vehicles, it had a duty to make the said vehicles reasonably safe for the use intended, as well as to make certain that the said article, thing, or chattel was properly maintained, and, in the alternative, the bailor had a duty to give

prompt and adequate warning if it knew or had reason to know of the danger of using the chattel or thing."

In answer to interrogatories, the United States, referring to the M–20 armored cars, stated: "Maintenance of the vehicles was done by Army personnel. First and second echelon maintenance was done by Sergeant Williams and major repairs were done by the Philadelphia Quartermaster Depot. No Army personnel were concerned with the operation of these vehicles." It follows that the United States did have "a duty to make the said vehicles reasonably safe for the use intended." The trial judge's finding of fact and conclusion of law, supra, necessarily include a finding that the United States performed that duty.

Finally, plaintiffs contend that the trial judge erred "in not finding as a fact that it was the failure of the United States Government in not properly equipping or maintaining the armored cars with a cut-off key ignition system, which failure proximately caused the injury to the minor-plaintiff."

It is a fact that the armored cars were not equipped with what counsel calls a "cut-off key ignition system". These vehicles were designed and made for a highly specialized and practical purpose,—warfare and training therefor. Inferentially, every detail of construction and equipment was a matter of careful planning and design, in the light of the purpose of the vehicle. In the complete absence of any evidence to the contrary on the subject, we are unwilling to say that it was negligence per se to fail to equip these vehicles with a particular kind of ignition system.

Moreover, the evidence is far from clear on the question of causation. Witnesses gave differing versions as to what really happened to bring about this most unfortunate accident. There was no persuasive evidence that the ignition system had anything to do with the occurrence.

We find no error in refusal to find in accordance with plaintiffs' request.

For the foregoing reasons, plaintiffs' motion for new trial of their action against the United States will be denied.